Filed 1/20/16  Win Win Alexandria Union v. Hujazi CA2/8

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| WIN WIN ALEXANDRIA UNION, LLC, | B257298 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC456257) |
| v. | |
| MONICA HUJAZI, | |
| Defendant and Appellant. | |
| KEVIN SINGER, | |
| Receiver. | |

APPEAL from an order of the Superior Court of Los Angeles County.  James C. Chalfant, Judge.  Dismissed.

Monica Hujazi, in pro. per., for Defendant and Appellant.

Wolf, Rifkin, Shapiro, Schulman & Rabkin and Elsa Horowitz, for Plaintiff and Respondent.

No appearance for Receiver.

_____

Win Win Alexandria Union, LLC (Win Win) filed suit against Monica Hujazi, both individually and in her capacity as the trustee of the Zuercher Trust of 1999 (the Trust), based on claims relating to two properties owned by the Trust. The trial court appointed a receiver to maintain the properties and to collect the rents, issues and profits they generated. After a foreclosure or bankruptcy sale at which Win Win bought the properties, the trial court granted the receiver's motion approving and settling his final report and accounting. Hujazi now appeals, challenging the receiver's fees. We dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The Trust owned two residential apartment buildings in Los Angeles. In 2005, East West Bank made two loans to the Trust, secured by deeds of trust against the properties. According to the complaint in this matter, in 2010, the Trust defaulted under the terms of the notes and deeds of trust by failing to pay amounts due. Hujazi had executed personal guaranties in connection with the notes; she too failed to make the payments due. In 2011, East West Bank sold the notes to Win Win. In March 2011, Win Win filed a complaint for judicial foreclosure of the two properties. In addition to foreclosure, the complaint sought specific performance for assignment of rents and the appointment of a receiver. The complaint also alleged claims against Hujazi for breach of the personal guaranties.

Win Win subsequently filed an ex parte application seeking appointment of a receiver to take over the properties. According to declarations accompanying the application, Hujazi and the Trust had mismanaged and neglected the properties to such an extent that they had been placed in the Los Angeles City Housing Department's Rent Escrow Account Program. The trial court appointed receiver Kevin Singer.

The receiver performed services over the next three years. In November 2012, the receiver notified the court that the Trust had filed a voluntary Chapter 11 bankruptcy petition. In December 2012, the bankruptcy court issued an order excusing the receiver

2

from turning over the properties.[1]  The bankruptcy court subsequently issued an order in July 2013, authorizing and approving the sale of the properties, free and clear of all liens, claims, and encumbrances.  In September 2013, the bankruptcy court issued an order approving a stipulation in the Trust's Chapter 11 bankruptcy allowing the receiver to seek approval of his final report and accounting in the trial court, provided no relief was sought against the Trustee or the bankruptcy estate.  In November 2013, the court issued an order in what was apparently Hujazi's personal bankruptcy, granting relief from the automatic stay to allow the receiver to file the final account and report in the trial court, provided no relief was sought against Hujazi or the bankruptcy estate.

In March 2014, the receiver filed motions for orders approving and settling his final report and accounting.  The receiver detailed the activities he had conducted, including tasks such as interacting with tenants, securing proper insurance, negotiating with the Los Angeles Housing Department regarding delinquent fees, engaging contractors to conduct required repair work, and successfully rehabilitating the buildings so that they were removed from the Rent Escrow Account Program.  He had incurred $344,025.80 in fees and expenses in connection with one property, and had already been paid $320,492.95 from the property operations, or "through the funding of the Receivership Estate provided by [Win Win]."  Only $1,165.65 remained, which the receiver proposed be satisfied with $981.29 remaining in the receivership trust account.  As to the other property, the receiver incurred $345,772 in fees and expenses.  He had already been paid $336,301.48, leaving $1,476.29, which he proposed be satisfied by funds from the receivership trust account, with the remaining account balance to be returned to Win Win. [2]  The motions were accompanied by voluminous monthly bills detailing the receiver's activities and charges for each month.

---

[1]    We have granted Win Win's unopposed request for judicial notice of orders issued by the bankruptcy court.  (Evid. Code, § 452, subds. (c), (d).)

[2]    The receiver had given the parties a "professional courtesy credit" of over $20,000 in connection with the first property, and nearly $8,000 on the second.

Hujazi objected to the motion. She asserted the matter should be stayed due to her bankruptcy, initiated in March 2013. Hujazi further asserted, through the declaration of her counsel: "Notwithstanding that I believe this matter is stayed, the basis for the receivers [*sic*] motion is not accurate to justify approval at this time. In addition, [Hujazi] respectfully asserts that the charges of the receivership are excessive and unreasonable." Hujazi further claimed the receiver's motion should not be approved because the sale of one of the properties was not yet final.

At a hearing on the motion, the court overruled Hujazi's objection based on the alleged excessiveness of the receiver's fees, noting there was nothing supporting the objection. The court asked the parties about the contention that the automatic stay in Hujazi's bankruptcy should apply. It appeared that Hujazi's counsel had not seen the November 2013 order from the bankruptcy court allowing the receiver to proceed in state court to have his final report and accounting approved. The court overruled the objection and granted the receiver's motion. This appeal timely followed.[3]

## DISCUSSION

On appeal, Hujazi asserts the trial court abused its discretion in approving the receiver's final report and accounting. The argument appears to be based on the assertion that the trial court made no deductions in the receiver's requested fees, and this indicates the trial court did not conduct an independent review of those fees. Hujazi further suggests this court should undertake a review of the fees in the first instance. Respondent contends the appeal must be dismissed because, due to the Trust bankruptcy, Hujazi has no standing to pursue this appeal. We agree.

The record reveals that the Trust went into bankruptcy during the pendency of the underlying litigation, and a bankruptcy trustee was appointed. "Upon the filing of a petition for bankruptcy all of the debtor's assets, including any interest in a cause of action, pass to the trustee in bankruptcy. (11 U.S.C. § 541(a)(1)); [Citations.] An appeal is a *continuation* of a cause of action. The action 'is deemed to be pending from the time

---

[3]     Hujazi is self-represented on appeal.

4

of its commencement until its final determination upon appeal, or until the time for appeal has passed, . . .' (Code Civ. Proc., § 1049; 9 Witkin Cal.Proc. (3d ed. 1985) Appeal, § 1, p. 33.)"[4] (*People v. Kings Point Corp.* (1986) 188 Cal.App.3d 544, 548-549.)

The Trust owned the properties that were placed into receivership. A Chapter 11 Trustee was appointed, and it was he who sold and transferred the properties on behalf of the Trust, with the approval of the bankruptcy court. Indeed, by the time of the receiver's final report and accounting, the properties had been transferred to Win Win. There is no indication in the record that Hujazi had an interest in the receivership estate separate from that of the Trust, or that she has any legal basis or authority to appeal a ruling regarding fees paid or to be paid out of the receivership estate. (*Bratcher v. Buckner* (2001) 90 Cal.App.4th 1177, 1184 [only those legally aggrieved by an order have standing to appeal—rights or interests must be injuriously affected].) The interests of the Trust passed to the bankruptcy estate by operation of law, thus it was the Chapter 11 Trustee, not Hujazi as trustee of the bankrupt Trust, who was the proper party to appeal any trial

---

[4]   Hujazi's objection to the trial court's approval of the receiver's final report and accounting is not a "cause of action." However, it is a claim based on a purported interest in the properties and receivership estate. Once the Trust filed for bankruptcy, those interests in the property and receivership necessarily passed to the bankruptcy estate. (See *Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1083-1084.)

court ruling affecting the properties and relating to the Trust's interests.[5]  (*Kings Point, supra,* 188 Cal.App.3d at p. 549.)[6]

---

[5]  We also note it appears that Hujazi herself went into an involuntary Chapter 7 bankruptcy, which would mean claims directly affecting her also would be subject to an automatic stay.  The record is incomplete, however, regarding her individual bankruptcy.  In light of our determination that Hujazi's objection related to an interest of the Trust which had passed to the bankruptcy estate, depriving her of standing, we need not consider the effects of her personal bankruptcy on her ability to appeal the trial court ruling.

[6]  Moreover, even if Hujazi had standing, we would reject her arguments.  It is a fundamental principle of appellate review that we do not presume error.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Webman v. Little Co. of Mary Hospital* (1995) 39 Cal.App.4th 592, 595.)  This court will not independently search the record for error— it is the appellant's burden to identify error, with proper citations to the record and legal argument.  (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204; *Fox v. Erickson* (1950) 99 Cal.App.2d 740, 741-742.)

We would reject Hujazi's arguments to the extent she simply asserts, without support, that the trial court did not review the receiver's fees before approving the final report and accounting, or that the amount of the fees itself demonstrates their impropriety.  "The amount of fees awarded to a receiver is 'in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees.'  [Citation.]"  (*Melikian v. Aquila, Ltd.* (1998) 63 Cal.App.4th 1364, 1368.)  We do not presume error in the trial court's orders, and Hujazi has not provided any basis for us to conclude the trial court failed to consider the necessary materials or to conduct an appropriate review prior to approving the receiver's final report and accounting.

To the extent Hujazi identified a small number of the receiver's charges as inappropriate because they were beyond the scope of the receiver's authority, or based on the dates of the services provided, she forfeited the objection by failing to raise it in the trial court.  The trial court is in the best position to evaluate the receiver's fees.  Hujazi now contends some of the receiver's actions were beyond the scope of authority granted by the court, based on the short descriptions of services provided in the billing statements.  Had she raised the argument in the trial court, an appropriate factual record may have been developed.  She did not.

6

## DISPOSITION

The appeal is dismissed.  Respondent is awarded costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


FLIER, J.